# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

RICHARD L. KELLER,

      Petitioner,

      v.                                     Case No. 19-CV-1833

CATHY JESS,

      Respondent.

## DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DISMISSING CASE

Richard L. Keller, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Keller was convicted of ten counts of possession of child pornography and was sentenced to forty years of incarceration consisting of twenty years of initial confinement followed by twenty years of extended supervision. (Answer, Judg. of Conviction, Docket # 14-1.) Keller alleges that his conviction and sentence are unconstitutional. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

In September of 2013, Heather Sullivan lived in a townhouse in Grafton, Wisconsin with her two children, ages ten and two. (Transcript of Jan. 27, 2016 Jury Trial ("Tr.") at 84, Answer, Ex. 7, Docket # 14-7.) Around that time, Sullivan met Keller on a dating website; however, she only knew him as "John Smith." (Tr. 85.) Sullivan testified that Keller was staying at a friend's house at the time and needed to store his vehicle and some personal possessions at Sullivan's townhouse. (Id.) She stated that Keller stored paperwork,

clothing, bedding, a computer, and related computer devices (such as hard drives, floppy disks, cords, cables, etc.) in her living room. (Tr. 91.) Keller also helped take care of Sullivan's children as well as some other children living in the townhouse complex. (Tr. 99.)

On April 4, 2014, Detective Gary Speth of the Ozaukee County Sheriff's Office received information that Keller was residing at a particular address in Grafton and that there was an outstanding warrant for his arrest. (Tr. 108–110.) Detective Speth arrived at the residence, but there was no answer at the door. (Tr. 110.) After speaking with several neighbors, Detective Speth observed a subject matching Keller's description looking out of the window at the address. (*Id.*) Speth knocked on the door, and this time the man answered. (*Id.*) Speth asked whether he was Richard Keller, and the man said he was not. (*Id.*) Detective Speth then told him that he knew who he was and that there was a warrant for his arrest; the man subsequently admitted to being Keller and he was taken into custody around 1:00 p.m. (Tr. 110, 112.) No one else was at the residence at that time. (Tr. 110–11.)

Sullivan testified that prior to Keller's arrest, she had never touched Keller's computer or accessed any of his disks, CDs, or other computer devices. (Tr. 87.) She further testified that she did not learn that "John Smith" was actually Keller until he was arrested. (Tr. 86.) After his arrest, however, Sullivan became concerned that Keller might have pictures of the children he was babysitting on his computer. (Tr. 87, 102.) Sullivan testified that she called her friend, Jaymie Lacey, to help her access Keller's computer. (Tr. 87.) Lacey testified that she, as well as another friend, Ashley Ball, went over to Sullivan's townhouse. (Tr. 100.) Lacey testified that she tried to open Keller's laptop, but it was password protected, so she could not gain access to all of the files. (Tr. 100–01.) She tried logging on as a guest, however, and after plugging in his external hard drive, discovered

approximately 100 photographs emphasizing the genitalia, breasts, and/or pubic area of underage children. (Tr. 102.) Lacey testified that both Sullivan and Ball were very concerned that their children might be amongst the photographs, as they saw images that appeared to be candid snapshots or photographs from a camera or cell phone. (*Id.*) After discovering the images, Sullivan did not want Keller's belongings to remain in her townhouse, so the three women packed up his things and placed them in Keller's car. (Tr. 94–95, 103.)

Detective Speth testified that around 3:30 p.m., he received a call from Sullivan advising that she found some "disturbing" photographs on Keller's computer and that she had loaded the equipment into his car and wanted it off her property. (Tr. 112.) Speth testified that with the information he received from Sullivan, he applied and obtained a search warrant that he executed on Keller's car and the property that was in it. (*Id.*) Speth testified that he recovered from Keller's car various personal property, computer equipment, paperwork, documents, books, pornographic videos, miscellaneous CDs, software, hardware, and a cell phone. (Tr. 112–13.) The computer equipment was submitted to the State Crime Laboratory for analysis, and one of the CDs contained over 3,500 images of child pornography while an external hard drive contained over 1,500 images of nude children and child erotica. (Tr. 115.)

Matthew Olesen, senior criminal analyst with the Wisconsin Department of Justice Division of Criminal Investigation assigned to the digital forensics unit, testified that he examined the computer equipment found in Keller's vehicle. (Tr. 137–39.) In addition to the child pornography and child erotica found on the equipment, Olesen testified that he found other identifying files, such as resumes with the names "Rick Keller" and "Richard Keller."

(Tr. 142–43.) Olesen further testified that he could not offer an opinion as to whether any of the images were actually viewed. (Tr. 148.) A jury found Keller guilty of all ten charged counts of possession of child pornography. (Tr. 221–26.)

Keller's appellate counsel filed a no merit report in the Wisconsin Court of Appeals pursuant to Wis. Stat. § 809.32 and *Anders v. California*, 386 U.S. 738 (1967). Keller's appellate counsel raised the following issues in the no merit report: sufficiency of the evidence, ineffective assistance of trial counsel, and a challenge to the court's sentence. (Answer, Ex. 2, Docket # 14-2.) Keller filed a response to appellate counsel's no merit report, raising ineffective assistance of trial and appellate counsel. (Answer, Ex. 3, Docket # 14-3.) The court of appeals summarily affirmed Keller's conviction. (Answer, Ex. 4, Docket # 14-4.) Keller filed a petition for review, which the Wisconsin Supreme Court denied on December 11, 2018. (Answer, Ex. 6, Docket # 14-6.)

Keller filed the instant habeas petition raising several grounds for relief. (Docket # 1.) Keller asserts that his trial counsel provided ineffective assistance by: failing to file a change of venue motion; failing to interview Keller's witness; failing to use this witness at trial; failing to hire a forensic investigator to find the date the computer login password was created and when the CDs were burned; failing to object to evidence being used in trial that Keller was not informed of; failure to object to the district attorney's statements; failure to properly impeach Sullivan; and failure to provide access to certain evidence. (Docket # 1 at 6–7.) Keller further asserts that his appellate counsel was ineffective for failing to raise all of the obvious issues of merit. (*Id.* at 7.) Finally, Keller alleges his rights were violated under *Brady v. Maryland*, 373 U.S. 83 (1963) when the trial court failed to instruct the State to give Keller the CD with the alleged child erotica and child pornography. (*Id.* at 10.) In his brief

4

in support of his habeas petition, Keller raises the additional arguments that he was convicted based upon insufficient evidence, prosecutorial misconduct (Petitioner's Br. at 2, 6–11, Docket # 28), and actual innocence (Petitioner's Reply Br. at 3, Docket # 40).

## STANDARD OF REVIEW

Keller's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

5

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

Again, while Keller raises three grounds for relief in his habeas petition—ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and a violation of his rights under *Brady*—he raises several additional arguments in his briefs, including actual innocence, sufficiency of the evidence, and prosecutorial misconduct. I will address each ground in turn.

### 1. Issues Raised in Habeas Briefing

As stated above, Keller raises several grounds for habeas relief in his briefs that he does not raise in his habeas petition, specifically: actual innocence; sufficiency of the evidence; and prosecutorial misconduct. Respondent argues that by failing to articulate

6

these grounds for relief in the habeas petition, Keller has waived them. (Resp. Br. at 1, Docket # 33.) I disagree. Keller is proceeding *pro se* and thus his pleadings should be liberally construed. Furthermore, even though several of these issues were not asserted in the habeas petition, by raising them in his brief, the respondent has had the opportunity to be heard on the issues. The Seventh Circuit has stated that a petitioner waives an issue when he fails to raise it in "either his habeas petition *or* his brief in the district court." *See Pole v. Randolph*, 570 F.3d 922, 937 (7th Cir. 2009) (emphasis added); *Bolton v. Akpore*, 730 F.3d 685, 694 (7th Cir. 2013) ("Because he did not raise this stand-alone suggestive lineup argument in either his habeas petition or in his briefing before the district court, he has waived it on appeal."). For these reasons, I do not find those issues waived.

### 1.1    Actual Innocence

Keller asserts that he "claims actual innocence in this case." (Petitioner's Reply Br. at 3.) While a showing of "actual innocence" is a way for habeas petitioners to overcome procedurally defaulted and time-barred habeas claims, "the Supreme Court has not held that actual innocence claims, standing alone—separate and apart from any constitutional error— could support habeas relief." *Cal v. Garnett*, 991 F.3d 843, 850 (7th Cir. 2021). Thus, to the extent Keller asserts actual innocence as an independent ground, he is not entitled to habeas relief.

### 1.2    Sufficiency of the Evidence

In his no-merit report, appellate counsel raised the potential issue that Keller was convicted upon insufficient evidence, specially, that possession of child pornography, as defined in Wis. Stat. § 948.12(1m), requires proof that one "know that he or she possesses or has accessed the material." (Docket # 14-2 at 4–5.) Appellate counsel argued, however, that

7

this issue lacked merit because the jury heard sufficient evidence as to this element to convict Keller beyond a reasonable doubt, specifically: evidence that Keller stored a car and various electronic items at Sullivan's house; testimony from Sullivan, Lacey, and Ball that they did not use the computer and did not plant the evidence on Keller; evidence that the police seized the items and that the forensic analyst evaluated them; and evidence that Keller went by a different name and had multiple pieces of identification, showing that Keller knew he was possessing contraband and wanted to keep it a secret. (*Id.* at 5.) The court of appeals found that it was "satisfied that the no-merit report properly analyze[d]" the issue as being without merit, and declined to discuss the issue further. (Docket # 14-4 at 2–3.)

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime for which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). When insufficiency of evidence is asserted as the basis for a habeas petition, the petitioner must show that "upon the record evidence adduced at the trial no rational trier of fact could have found proof beyond a reasonable doubt." *Cabrera v Hinsley*, 324 F.3d 527, 533 (7th Cir. 2003) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 324 (1979)). The inquiry does not require the federal habeas court to "ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citing *Woodby v. INS*, 385 U.S. 276, 282 (1966)). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* A federal habeas court

8

determines the sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. *See id.* at 324 n.16.

To convict a person of possession child pornography under Wis. Stat. § 948.12(1m), the State must prove the following four elements beyond a reasonable doubt:

1. the defendant knowingly possessed a recording;

2. the recording showed a child engaging in sexually explicit conduct;

3. the defendant knew or reasonably should have known that the recording contained depictions of a person engaged in actual or simulated sexually explicit conduct; and

4. the defendant knew or reasonably should have known that the person engaged in sexually explicit conduct was under the age of 18 years.

Wis JI-CRIM. 2146A. Keller challenges the jury's finding that the State proved the first element of the offense beyond a reasonable doubt, i.e., that Keller knowingly possessed the CD containing child pornography. (Petitioner's Br. at 6.) He argues that the State's forensic expert testified that he could not conclude that the images were accessed or viewed; rather, the only link tying Keller to possession of the CD was Sullivan's testimony, and Sullivan lacked credibility. (*Id.*)

Keller has not shown that the court of appeals' determination contravenes the clearly established law as determined by *Jackson*. The trial court instructed the jury that "possession" under the statute means either that "the defendant knowingly had actual physical control of the recording" or the recording "is in an area over which the person has control and the person intends to exercise control over the recording." (Tr. 169–70.) As the court of appeals concluded in adopting the arguments found in the no-merit report, the

9

record contains sufficient evidence to support the jury's verdict. Again, Sullivan testified that Keller kept his things (including computer equipment) in her living room, that she herself did not own a computer, and that she had never touched his computer. (Tr. 86–87, 89.) Olesen testified that in addition to the images and movies of child erotica found on Keller's external hard drive and laptop hard drive, he also found other identifying files on either the laptop or external hard drive, including resumes with the names "Rick Keller" and "Richard Keller." (Tr. 141–43.) Keller argues that the introductory paragraph of Wis. Stat. § 948.12(1m) states that one must intend to view the images of child pornography, and Olesen testified that he could not offer an opinion as to whether the images were actually accessed or viewed. (Petitioner's Br. at 6–8, quoting § 948.12(1m) ("Whoever possesses, or accesses in any way <u>with the intent to view</u>" . . .).) But the jury was entitled to credit Sullivan's testimony that the computer and associated equipment belonged to Keller and Olesen's testimony that Keller's resume also was found on the same computer to find that Keller possessed the images with an intent to view them. As such, I do not find that Keller is entitled to habeas relief on this ground.

### 1.3    Prosecutorial Misconduct

Keller argues that the State engaged in multiple instances of misconduct that violated his due process rights. (Petitioner's Br. at 9.) He argues that Lacey testified that Keller had multiple state driver's licenses; however, the State referred to them as "fake ID's." (Petitioner's Br. at 10–11.) He further argues that the State misled the jury by suggesting that the external hard drive, laptop, and CD all contained child pornography, when only the CD contained child pornography. (*Id.*)

10

Inflammatory, prejudicial statements made by a state prosecutor, evidencing a desire to improperly prejudice the defendant, may be serious enough to warrant federal habeas corpus relief. *Rose v. Duckworth*, 769 F.2d 402, 405 (7th Cir. 1985). "In order to rise to the level of constitutional error, prosecutorial misconduct that does not implicate a specific provision of the Bill of Rights must have been 'so egregious that it deprived the defendant of a fair trial, thus making the resulting conviction a denial of due process.'" *Id.* (quoting *United States ex rel. Shaw v. DeRobertis*, 755 F.2d 1279, 1281 (7th Cir. 1985)). To determine the effect of prosecutorial misconduct, the reviewing court must consider the erroneous acts in the context of the entire trial, and each case must be determined on its own facts. *Id.*

The court of appeals found that while Keller "may perceive the testimony presented at trial to be untruthful, nothing in the record suggests that evidence was misused or knowingly false." (Docket # 14-4 at 7–8.) The court of appeals further found that Keller's "claims of prosecutorial misconduct [were] too conclusory to be considered meritorious." (*Id.* at 8.)

Keller has not demonstrated that the court of appeals erred in its determination that his prosecutorial misconduct claim lacks merit. Regarding the "fake ID" comment, Lacey testified that she found "several different driver's licenses from different states . . . with his pictures on it." (Tr. 104.) During closing arguments, the State argued that Lacey "found a variety of different driver's licenses and IDs . . . . They seemed to be from different states under different names, but all of them had the face of the defendant on it." (Tr. 184.) In rebuttal, the State asked the rhetorical questions: "why the double life?"; "why the subterfuge about John Smith living in the Town of Grafton?"; and "why the fake IDs?" (Tr. 201.) Keller argues that his IDs were not "fake"; rather, he was adopted at age 19 and

11

seemingly argues that at least one of his IDs had his birth name of "Ricky Lee Groover" on it. (Petitioner's Br. at 11.) Given the totality of the evidence, Keller has not demonstrated that the court of appeals' assessment of the prosecutor's isolated statement about fake IDs was contrary to federal law.

Keller further argues the State misled the jury by suggesting that the external hard drive, laptop, and CD all contained child pornography, when only the CD contained child pornography. This is simply inaccurate. During closing, the State argued that Keller had a proclivity towards children, stating that the "pertinent equipment" included the laptop, external hard drive, and CD. (Tr. 182.) The State argued that the laptop contained "movies and films of children, many of it in foreign languages," the external hard drive contained child erotica, and that the CD "held child pornography on it." (*Id.*) This argument was consistent with Olesen's testimony that he found movies of children on the laptop and external hard drive that he would describe as child erotica (Tr. 141), that he found images of child erotica on the external hard drive (Tr. 144), and that child pornography was only found on one disk (Tr. 146). Thus, Keller has not demonstrated that the court of appeals erred in this regard.

2. *Issues Raised in Habeas Petition*

Keller raised three issues in his habeas petition—ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and a violation of his rights under *Brady*.

2.1 Ineffective Assistance of Trial Counsel

2.1.1 Legal Standard

The clearly established Supreme Court precedent for ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective

assistance of counsel, Keller must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. To satisfy *Strickland's* performance prong, the defendant must identify "acts or omissions of counsel that could not be the result of professional judgment." *United States ex rel. Thomas v. O'Leary*, 856 F.2d 1011, 1015 (7th Cir. 1988) (citing *Strickland*, 466 U.S. at 690). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (quoting *Strickland*, 466 U.S. at 689). A reviewing court must seek to "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. We "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance," *id.*, and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *id.* at 690.

To establish prejudice, it is "not enough for the defendant to show that his counsel's errors had some conceivable effect on the outcome of the [trial]." *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001). A petitioner must show "that there is a reasonable probability that, but for counsel's errors, the result of the [trial] would have been different." *Strickland*, 466 U.S. at 694. This does not mean that the defendant must show that "counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. Rather, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Making this probability determination requires consideration of the totality of the evidence before the jury. *Id.* at 695. A "verdict or conclusion only weakly supported by the

13

record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

A court deciding an ineffective assistance claim need not approach the inquiry "in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.*

### 2.1.2 Application to this Case

Keller alleges that his trial counsel was ineffective in a myriad of ways. First, he argues that his counsel refused to give him a copy of the discovery, specifically, the alleged child pornography and child erotica. (Petitioner's Br. at 12–13.) Second, he asserts that counsel was ineffective for failing to impeach Sullivan with several inconsistent statements made to law enforcement during the criminal investigation. (*Id.* at 13–14.) Third, he argues trial counsel failed to interview various potential witnesses with allegedly exculpatory information. (*Id.* at 15–16.) Fourth, he argues trial counsel made statements during his closing argument that were tantamount to admitting guilt and failed to object to inaccurate statements the State made in its closing argument. (*Id.* at 16–17.) And fifth, he asserts trial counsel erroneously refused to let Keller testify in his own defense. (*Id.* at 17.)

The court of appeals considered and rejected all of these arguments. As to counsel's alleged failure to provide Keller with a complete copy of the discovery, the court of appeals

found that because child pornography is illegal contraband that cannot be disseminated, especially to a prison inmate, it "was not wrong for trial counsel to refuse to provide Keller with copies of child pornography or child erotica." (Docket # 14-4 at 5.) The court of appeals concluded that the defense had access to the seized materials and had its own expert examine it. (*Id.*) As such, the court of appeals found that Keller cannot demonstrate prejudice from him personally not receiving a complete copy of discovery. (*Id.*)

Keller argues that by trial counsel not going through the discovery with him, counsel was unable to "understand [Keller's] side" and to "provide a minimally competent professional representation." (Petitioner's Reply Br. at 11.) But Keller does not explain how defense counsel could have better understood his side by viewing the explicit images together with him. Defense counsel was provided the discovery and was able to speak with Keller about it. It was not necessary for Keller and defense counsel to view the images together in order to "provide a minimally competent professional representation" as Keller argues. (*Id.*) Thus, the court of appeals' finding as to this issue does not violate *Strickland*.

Next, Keller asserts that defense counsel was ineffective for failing to impeach Sullivan. He argues that Sullivan told law enforcement that "John Smith moved in with her approximately September 2013, and has been sleeping in her living room on the couch," and also stated that "John needed a place to stay, so she offered to let him stay with her." (Petitioner's Br. at 13.) Keller argues that Sullivan testified, however, that only she and her two children lived at the residence and that Keller was only storing stuff at her place. (*Id.*) Thus, Keller argues that Sullivan clearly testified that Keller was not living with her when she previously told law enforcement that he was. (*Id.*) He further argues that Sullivan told law enforcement that Keller had never watched or been alone with her kids, but she testified

15

at trial that Keller babysat for her on several occasions. (*Id.*) Finally, Keller argues that Sullivan testified that the officer told her to pack Keller's items up and take them out of her residence, but Detective Speth testified that he did not instruct her as such. (*Id.* at 14.)

The court of appeals found that Keller argued, in "a conclusory fashion," that trial counsel was ineffective for failing to impeach witnesses and found that trial counsel "did the best with what he had to work with, including argument to the jury that possession of the CD had not been established." (Docket # 14-4 at 6.) Keller argues that because Sullivan was the only witness linking him to the CD containing child pornography, failing to impeach her was prejudicial to his case. (*Id.* at 14.)

I do not find the court of appeals erred on this ground. Keller is incorrect that the State's case hinged on Sullivan's testimony. (*Id.*) Again, Olesen testified that he found resumés with Keller's name on either the laptop and/or the external hard drive that also contained child erotica (Tr. 141, 144), and Detective Speth testified that this equipment was found amongst Keller's other personal possessions, including the CD that contained child pornography (Tr. 112–13, 146). Furthermore, Sullivan was not the only witness to testify regarding the images found on Keller's computer. Lacey also testified that she found images of underage children focusing on their genitalia, breasts, or pubic area. (Tr. 102.) Thus, it is unclear how Sullivan's alleged contradictory statements regarding whether Keller lived or merely stayed with her, or whether he ever babysat her kids, would have benefited his defense.

Keller next argues that his trial counsel was ineffective for failing to interview various potential witnesses with allegedly exculpatory information. Specifically, Keller argues that Sullivan's babysitter "Helen," as well as Keller's girlfriend, Sara Miller, would have both

testified that Keller lived with Sullivan. (Petitioner's Br. at 15.) Keller further argues that both would also testify that Sullivan, her son, and Ball's son used Keller's laptop and external hard drive. (*Id.*) The court of appeals rejected this argument, finding that Keller had insufficient information regarding "Helen" for defense counsel to contact her and that even if he did, "Helen's" potential testimony was unrelated to the CD on which the child pornography was found. (Docket # 14-4 at 5.) Keller proffered similar testimony from Miller. The court of appeals did not err in this assessment. As the court of appeals found, Keller was not prejudiced by counsel not presenting witnesses that would not have addressed the critical evidence. (*Id.*)

Next, Keller argues that defense counsel did not argue that the CD in question could have belonged to Sullivan's fiancé, "a known sex offender who has a proclivity to underage females." (Petitioner's Br. at 16–17.) Keller also argues that trial counsel made statements during his closing argument that were tantamount to admitting guilt and failed to object to inaccurate statements the State made in its closing argument. (*Id.*)

Regarding trial counsel's alleged failure to accuse Sullivan's fiancé, the court of appeals found that counsel "cannot simply suggest a third-party perpetrator without satisfying the legitimate tendency test which requires evidence, directly or indirectly, that the third-party perpetrator actually committed the crime." (Docket # 14-4 at 6.) The court of appeals found that Keller's "conclusory assertions" do not "approach satisfying the test." (*Id.*) Keller again offers no more than conclusory assertions regarding Sullivan's fiancé's alleged guilt. Thus, the court of appeals did not err in this regard.

As to defense counsel's statements made in closing, Keller takes issue with counsel's statement in which he acknowledged that it was "probably tough for [the jury] to look at

17

[the images]," but explained that it was "necessary to show that the images someone is being charged with actually are images that they should not be possessing, that these are illegal images, that the images are child pornography." (Tr. 196.) Keller argues that this statement suggested that Keller did possess the images and that they were illegal. (Petitioner's Br. at 16–17.)

Keller also takes issue with another statement counsel made during closing. Specifically, he likened the evidence in this case to a "junk drawer" that one may keep in his or her house that contains a "bunch of junk" one throws in the drawer and that one might not know all that is in the drawer. (Tr. 199.) He argued that numerous electronic devices were recovered with thousands of images, but only ten images were charged. (*Id.*) Keller again asserts that defense counsel effectively suggested or admitted Keller's guilt. (Petitioner's Br. at 17.) Finally, he argues that trial counsel failed to object to the State's alleged misstatements during its closing. (*Id.*)

The court of appeals noted that Keller's arguments on these points were made in a "conclusory fashion," and after reviewing the entire record, the court was unpersuaded that the claims permit a meritorious claim of ineffective assistance of counsel. (Docket # 14-4 at 6.) Nothing in the statements Keller cites from his trial counsel either suggests or admits guilt. Counsel ended his closing by arguing: "What the evidence in this case says is that on April 4th, 2014, Richard Keller did not knowingly possess child pornography." (Tr. 200.) Trial counsel's "junk drawer analogy" was an attempt to counter with a "better analogy" (Tr. 198–99) than an analogy previously drawn by the State comparing Keller's "possession" case to a drug possession case (Tr. 203–05). Perhaps Keller is correct that counsel could have used a clearer analogy. (Docket # 14-4 at 6.) However, so long as

18

counsel makes "a reasonable strategic decision," the decision is "not subject to Monday-morning quarterbacking," *Atkins v. Zenk*, 667 F.3d 939, 945 (7th Cir. 2012), even if "in hindsight, another decision may have led to a better result," *Corral v. Foster*, 4 F.4th 576, 585 (7th Cir. 2021). Further, as explained in detail above, trial counsel did not err in failing to object to the State's alleged misstatements in its closing argument. Keller is not entitled to habeas relief on this ground.

Finally, Keller argues that his trial counsel erroneously refused to let Keller testify in his own defense. (Petitioner's Br. at 17.) The court of appeals rejected this argument, finding that trial counsel's on-the-record colloquy with Keller established that Keller knowingly decided not to testify. (Docket # 14-4 at 6–7.) Indeed, the record establishes that Keller understood his right to testify in his own defense, that he discussed the decision with counsel, and when asked, "And what is your decision today? Do you want to testify or not?", he responded that "I do not wish to testify." (Tr. 151–53.) Keller confirmed that he was not threatened or forced into making the decision. (Tr. 153.) Thus, Keller has not shown the court of appeals erred in this finding.

In sum, while Keller alleges his trial counsel was deficient in multiple ways, he has not established that the court of appeals' decision was contrary to, or an unreasonable application of, *Strickland*. Thus, he is not entitled to habeas relief on this ground.

### 2.2    Ineffective Assistance of Appellate Counsel

Keller argues that his appellate counsel was ineffective for failing to present the issues he raised regarding his trial counsel's ineffectiveness. (Petitioner's Br. at 17–18.) Keller further argues that "after the State's forensic witness testified, when the jurors were not in the courtroom," the State and his defense counsel "had an exchange regarding a deal they

19

made to not impeach the State's witnesses." (*Id.* at 18.) Keller argues that appellate counsel could have listened to the trial transcript and raised this issue. (*Id.*)

As an initial matter, to the extent Keller argues that appellate counsel should have raised the issue of ineffective assistance of trial counsel, it is not appellate counsel on direct appeal who raises such issues, but post-conviction counsel in a § 974.06 motion or a state habeas petition pursuant to *State ex rel. Rothering v. McCaughtry*, 205 Wis. 2d 675, 681, 556 N.W.2d 136, 139 (Ct. App. 1996) in the trial court of conviction. Furthermore, a claim for ineffective assistance of appellate counsel must be raised, in the first instance, in a *State v. Knight*, 168 Wis. 2d 509, 520, 484 N.W.2d 540, 544 (1992) petition before the Wisconsin Court of Appeals. It does not appear that Keller did either of these things and thus has not exhausted this claim.

Furthermore, even if Keller had properly raised these claims in the state court, they are without merit. As to his argument that trial counsel was ineffective, for the reasons explained above, Keller has not shown the court of appeals erred in rejecting his ineffective assistance of trial counsel claim. Thus, appellate counsel was not ineffective for failing to raise these non-viable arguments. As to Keller's argument that appellate counsel should have raised the issue of an alleged "deal" between his counsel and the State not to impeach Sullivan, when the petitioner is challenging the selection of issues presented on appeal, "appellate counsel's performance is deficient under *Strickland* only if she fails to argue an issue that is both 'obvious' and 'clearly stronger' than the issues actually raised." *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015) (internal citation omitted). The record does not show any such deal between counsel. Rather, the portion of the transcript Keller cites to is his defense counsel's motion at the close of evidence to dismiss the charges against Keller

20

based on lack of evidence that he knowingly possessed the images. (Tr. 150–51.) The court denied the motion and allowed the case to proceed to the jury. (Tr. 151.) For these reasons, Keller is not entitled to habeas relief on this ground.

### 2.3 Violation of Rights under *Brady*

Finally, Keller argues that his rights under *Brady* were violated when the State failed to provide Keller with a complete copy of the State's discovery. (Petitioner's Br. at 9–11.) To receive a new trial based on a *Brady* violation, a defendant must show: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defendant; and (3) that it is material to an issue at trial. *See United States v. Daniel*, 576 F.3d 772, 774 (7th Cir. 2009) (internal quotation and citation omitted). "Favorable" evidence includes exculpatory substantive evidence, as well as evidence with impeachment value. *United States v. Bagley*, 473 U.S. 667, 676 (1985). Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Daniel*, 576 F.3d at 774. In other words, "a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *Bagley*, 473 U.S. at 678.

Keller focuses on two pieces of evidence allegedly withheld—Sullivan's statement to law enforcement contradicting her testimony at trial and the disk containing child pornography. (Petitioner's Br. at 9–10.) As to the disk, as explained above, the State did not suppress this evidence. Keller's counsel was given a copy and was allowed to view it. And, as discussed above, the court of appeals did not err in finding counsel was not wrong to refuse to provide Keller with copies of child pornography while he was in prison.

21

As to Sullivan's statements, even if the State failed to turn these statements over as Keller contends, for the reasons explained above, whether Keller lived with Sullivan or simply stayed with Sullivan is immaterial to the issue at trial. Whether Keller lived with Sullivan or merely stayed with him, the jury needed to answer the same question: Whether the state proved that Keller knowingly possessed child pornography. After considering all the evidence, the jury answered in the affirmative. Though Keller disagrees with the jury's verdict, Keller is not entitled to habeas relief on this ground.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 and n.4).

Jurists of reason would not find it debatable that Keller is not entitled to habeas relief. Thus, I will deny Keller a certificate of appealability. Of course, Keller retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

# ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 22nd day of December, 2022.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge